UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| HAROLD D. ISAAC, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-CV-27-SNLJ |
| | ) | |
| DANA COCKRELL and | ) | |
| TIMOTHY HOLSTEN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff Harold Isaac's[1] motion for the Court to "Provide Remedial Just Order" (#96) and motion to enter a document into the record (#98). Defendants Dana Cockrell and Timothy Holsten's motion for summary judgment (#67) is also before the Court. The matters are fully briefed. Isaac's motions to "Provide Remedial Just Order" and to enter a document into the record are denied. Summary judgment is granted in favor defendant Cockrell, and the parties are ordered to submit supplemental briefing as explained below.

## I. Background

The events giving rise to this lawsuit happened while Isaac was an inmate at the Southeast Correctional Center ("SECC"). Back on November 24, 2015, Isaac was

---

[1] Isaac is no stranger to this Court. Back in 2013, he filed a petition for writ of habeas corpus. *Isaac v. Wallace*, No. 4:13-CV-411-SNLJ (E.D. Mo.). It was dismissed because this Court lacked jurisdiction (#34). The Court notes that Isaac has "supplemented" his Amended Complaint at least eighteen times, though many of these "supplements" have nothing to do with the alleged conduct at issue in this lawsuit.

1

removed from the general prison population and taken to the restrictive housing unit for allegedly sending a threatening letter to the Deputy Warden. He denies making these threats, and after obtaining the allegedly threatening letter through discovery in this case, Isaac now claims the Deputy Warden herself inserted the threats in his letter (#96). Isaac also claims prison officials lost his laundry bag when they moved him from general population to the restrictive housing unit, and as a result, he was forced to sleep on dirty bedding for months.

Around this same time, Isaac was also trying to file an Informal Resolution Request ("IRR") because he believed prison officials opened privileged legal mail outside his presence, in violation of prison policy, and removed part of the letter's contents. Specifically, he claims that defendant Holsten, an SECC case manager, delivered an already-opened letter from the Law Library of Congress. The letter mentioned documents that were included in the envelope, but Isaac could not find these other documents. So he assumed that Holsten stole them. Additionally, Isaac claims the prison staff blocked him from using the IRR process during November and December 2015.

A little more than a week after being removed from the general population, Isaac had an initial restrictive housing unit review before three prison officials. Neither defendant Cockrell, another SECC case manager, nor Holsten was part of the initial review committee. About two weeks later, Isaac was moved to a "stipulated program wing" and assigned to Phase 5. Inmates assigned to this wing must complete all of the program's "phases" before they are eligible to return to the general prison population.

After two more weeks, on December 29, 2015, Isaac had a thirty-day restrictive housing unit review before another committee of three prison officials. Both Cockrell and Holsten were part of the committee. At this hearing conducted at Isaac's cell, Cockrell asked Isaac if he had a statement for the committee. Isaac responded by asking "why are so many black people in here." Cockrell wrote down Isaac's statement on a classification hearing form (#69-5 at 14) and slid the form into Isaac's cell for his signature. Isaac refused to sign the form because Cockrell misquoted his statement: Cockrell quoted Isaac saying "why *were* so many black people in here," while Isaac claims he said "why *are* so many black people in here." Isaac returned the unsigned form, and the committee moved on to the next hearing.

As the committee was walking to the next hearing, Isaac yelled "they gave a white boy ten days['] room restriction for a knife." Holsten identified Isaac as the person who yelled, and Cockrell then instructed officers to "take him back to the other side." Isaac's classification hearing form had recommended keeping him in Phase 5. Presumably after Isaac's outburst, the committee crossed out this recommendation and instead suggested assigning Isaac to Phase 2—a demotion—because he was "disruptive, argumentative[, and] very angry during his hearing and while conducting other hearings." (#69-5 at 14.) All three committee members signed the hearing form recommending that Isaac be assigned to Phase 2. The Deputy Warden eventually signed off on the committee's recommendation.

A few days later, on January 3, 2015, Isaac gave a kite with three requests to Holsten. He wrote on the kite: "I need an IRR to file on missing legal mail . . . This is my

3

4th request! And I need a law library request form. And I've been without a laundry bag since 11-24-15—the staff lost it!!!" Holsten stamped "denied" on the kite and returned it to Isaac the next day.

Isaac brings this lawsuit under 42 U.S.C. § 1983. He alleges that Cockrell violated his First Amendment rights by retaliating against him in extending his time in the restrictive housing unit because he asked about the racial composition of the stipulated program wing. He also claims that Holsten violated his right to substantive due process of law.[2]

## II. Motion for Remedial Just Order (#96)

Isaac asks this Court to provide a "remedial just order" before ruling on defendants' motion for summary judgment, because he now believes the Deputy Warden, a previous defendant who was dismissed from this case (#21), inserted the threats in the letter that led to his removal from the general prison population.

### A. Legal Standard

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure,

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>   (1) defer considering the motion or deny it;
>
>   (2) allow time to obtain affidavits or declarations or to take discovery; or
>
>   (3) issue any other appropriate order.

---

[2] Isaac initially named several other defendants who were dismissed without prejudice (#21). He also alleged other claims against both Cockrell and Holsten that were dismissed (#35).

Generally, "summary judgment is appropriate 'only after the nonmovant has had adequate time for discovery.'" *Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016) (*quoting Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014)). Under Rule 56(d), a nonmovant may request a continuance "until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition" to summary judgment. *Id.*

To succeed on his Rule 56 motion, Isaac must show "(1) that [he] ha[s] set forth in affidavit form the specific facts that [he] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." *Id.* (alteration in original) (*quoting Toben*, 751 F.3d at 895).

### B. Discussion

Isaac has not made the required showing. Even if the Deputy Warden did alter the document that led to Isaac's removal from the general prison population, that letter is unrelated to the claims against both Cockrell and Holsten. Neither was involved in the decision to remove Isaac from the general prison population, and Isaac's claims against Cockrell and Holsten stem from events that are unrelated to this letter. Thus, Isaac's motion is denied.

To the extent that the motion for "Remedial Just Order" can be read as an attempt to amend the complaint and pull Deputy Warden Reed back into the lawsuit, the motion still fails. Although Isaac initially sued Reed using a respondeat superior theory, she was dismissed because she was not directly responsible for the deprivation of any rights (#21 at 3). But now Isaac alleges that Reed, herself, inserted the threats in the letter—threats

5

to herself. Isaac offers no other allegations whatsoever to explain this absurd and scandalous accusation, and it is wholly insufficient to support a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, Isaac has failed to nudge[] [his] claim[]" against Reed "across the line from conceivable to plausible." *Id.* at 680 (second alteration in original) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III. Motion for Summary Judgment (#67)

#### A. Legal Standard

In ruling on a motion for summary judgment, the Court must review the facts in the light most favorable to the party opposing the motion and must give that party the benefit of any inferences that logically can be drawn from those facts. *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1053 (8th Cir. 2004). But this Court is not required to "accept unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004).

The moving party must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence, it must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, summary judgment is appropriate. *Pedersen v. Bio–Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

#### B. Discussion

6

The Court addresses each defendant separately.

1. **Defendant Cockrell**

To prevail on a §1983 claim for retaliation in violation of the First Amendment, Isaac must show "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013).

Cockrell concedes that Isaac's question about the racial makeup of the stipulated program wing is a protected activity, and she does not argue that additional time in the restrictive housing unit is not an adverse action that would chill a person of ordinary fitness. She disputes only the third element.

Isaac claims that Cockrell demoted him to Phase 2 (extending his overall time in the restrictive housing unit) because he asked about the racial composition of the stipulated program wing. To the contrary, Cockrell claims that Isaac was demoted based on his conduct at the hearing. First, Cockrell notes that Isaac did not complete the first assignment of his Phase 5 program—Isaac disputes this. Second, Cockrell claims Isaac was "disruptive, argumentative, and very angry" at the hearing. As explained above, Isaac admits that he yelled as the committee left his cell and went to the next hearing.

Isaac's yelling is crucial because "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). Thus, Cockrell "may successfully defend a

7

retaliatory discipline claim by showing 'some evidence' [that Isaac] actually committed a rule violation." *Id.* (*quoting Goff v. Burton*, 7 F.3d 734, 738–39 (8th Cir. 1993)). Cockrell has made that showing. Isaac's yelling while the committee moved to its next hearing is "some evidence" that Isaac violated a rule. Specifically, the stipulated program wing guidelines require Isaac's interactions with staff to be respectful (#91-4 at 10). Isaac is also required to follow staff instructions without debate or resistance (#91-4 at 10). Isaac's yelling and disruption is at least "some evidence" that he violated a prison rule, and Cockrell is entitled to summary judgment.[3]

### 2. Defendant Holsten

In their briefing, both parties analyzed whether Holsten retaliated against Isaac in violation of the First Amendment and subjected him to conditions of confinement that violate the Eighth Amendment. In ruling on a motion to dismiss, this Court did view the claim against Holsten as a retaliation claim (#35 at 4–5). But on closer examination of the Amended Complaint (#6), Isaac asserts no retaliation claim against Holsten. He alleges only that Holsten violated his right to due process of law. This Memorandum and Order modifies the previous Memorandum and Order (#35) that considered a retaliation claim against Holsten.

To prevail on due process claim, Isaac "must first demonstrate that he was deprived of life, liberty, or property by government action." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) (*quoting Phillips v. Norris*, 320 F.3d 844, 846

---

[3] Because the Court finds that Cockrell did not violate any constitutional right, she is also entitled to qualified immunity. *See Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

(8th Cir. 2003)). "To show he was deprived of a protected liberty interest, [Isaac] must identify conditions that impose 'atypical or significant hardship . . . in relation to the ordinary incidents of prison life.'" *Id.* (second alteration in original) (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Isaac claims Holsten violated his due process rights by denying the three requests in his kite.

First, Isaac claims Holsten "violated [his] rights to due process of law by blatantly denying [his] request for an IRR." (#6 at 10.) But inmates do not have a constitutionally protected right to the prison grievance process. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Id.* Because Isaac does not have a standalone constitutional right to the prison grievance process, and because this Court already dismissed his access-to-the-courts claim since he failed to allege a legal injury (#35 at 6), this claim fails.

Second, Isaac claims Holsten violated his due process rights by refusing to give him a law library request form. This is really an access-to-the-courts claim, and this Court previously dismissed that claim because Isaac alleged only that he was denied access to the law library at some point (#35 at 6). He failed to allege that he suffered a legal injury. This claim fails, too.

9

Third, Isaac claims Holsten violated his due process rights by failing to give him a laundry bag; thus, Isaac was forced to sleep on dirty bedding for months. The parties addressed this allegation in the context of a retaliation claim, but they did not brief it in the substantive due process context. As such, the parties are ordered to submit supplemental briefing to address whether (1) Isaac had a liberty interest to sleep on clean sheets, (2) if Isaac did have a liberty interest, he was deprived of it, and (3) Holsten caused the deprivation. Holsten will have twenty-one days to submit supplemental briefing, and Isaac will have an additional twenty-one days after that.

### IV. Motion to Enter Document into Record (#98)

Isaac asks to enter into the record a classification hearing form dated June 21, 2016. This hearing occurred well after the conduct at issue in this lawsuit, and Isaac fails to explain how the document is relevant. Thus, the motion is denied.

### V. Conclusion

Isaac's motions to "Provide Remedial Just Order" and to enter a document into the record are denied. Summary judgment will be granted in favor of Cockrell. The parties are ordered to submit additional briefing as explain above.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Harold Isaac's motion for the Court to "Provide Remedial Just Order" (#96) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff Harold Isaac's motion to enter a document into the record (#98) is **DENEID**.

**IT IS FURTHER ORDERED** that defendant Dana Cockrell's motion for summary judgment (#67) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties are ordered to submit supplemental briefing as explained above.

So ordered this  12th  day of February 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE