UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| HAROLD D. ISAAC, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-00027-SNLJ |
| | ) | |
| DANA COCKRELL and | ) | |
| TIMOTHY HOLSTEN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The following motions are currently before this Court: defendant Timothy Holsten's motion for summary judgment (#67); plaintiff Harold Isaac's "motion to submit awaiting exhibits" (#129); and Isaac's "motion for emergency injunctive request in lieu of false imprisonment[,] staff retaliation[,] and use of state equipment and computors (sic) to force and falsify conduct violation report in attempt to mislead" (#130).

The Court has previously granted a portion of Holsten's motion for summary judgment, leaving only a single claim for the alleged deprivation of a laundry bag (#101, p. 9-10). That claim is resolved below. The Court will grant Isaac's uncontested motion seeking to submit additional exhibits, as those exhibits respond to Holsten's motion for summary judgment. Finally, the Court will deny Isaac's motion for emergency injunctive relief, as that motion—requesting the Court to "petition the inspector general's office to make a record of [Isaac's] statements about what actually transpired on 8-23-2018"

1

between non-parties and Isaac—appears to have nothing to do whatsoever with the issues in this case. *See De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945) (an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit"); *Atakpu v. Lawson*, 2006 WL 3803193 at *2 (S.D. Ohio Nov. 28, 2006) (detainee's motion seeking injunctive relief denied as unrelated to his complaint).

**I. BACKGROUND**

On February 12, 2018, this Court ordered the parties to submit supplemental briefing on Holsten's motion for summary judgment (#67), finding:

> "[I]n their briefing, both parties analyzed whether Holsten retaliated against Isaac in violation of the First Amendment and subjected him to conditions of confinement that violated the Eighth Amendment … [but] on closer examination of the Amended Complaint (#6), Isaac asserts no retaliation claim against Holsten. He alleges only that Holsten violated his right to due process of law … Isaac claims Holsten violated his due process rights by failing to give him a laundry bag; thus, Isaac was forced to sleep on dirty bedding for months … As such, the parties are ordered to submit supplemental briefing to address whether (1) Isaac had a liberty interest to sleep on cleans sheets; (2) if Isaac did have a liberty interest, he deprived of it; and (3) Holsten caused the deprivation."

(#101, p. 8-10).

Holsten submitted supplemental briefing on March 3, 2018 (#102), and Isaac's supplemental briefing followed on August 8, 2018 (#127)—after several requests for extension of time to respond. The parties did not submit supplemental statements of fact, and, as such, appear content to rely upon their original statements despite many of the facts being geared towards a retaliation claim (#69, #90). Indeed, on the narrow issue of Holsten allegedly depriving Isaac of a laundry bag, only one fact is established, with another fact being disputed. However, both parties provided copious exhibits to explain

their respective version of what transpired regarding the laundry bag. (#69-4, #69-5, #127-2). In fact, through a "Motion to Submit Awaiting Exhibits" (#129), Isaac seeks to provide additional exhibits—this time medical records from the Medical Accountability Records System (MARS)—that, in his opinion, shows the lack of clean bedsheets (caused by the lack of a laundry bag) contributed to certain medical conditions.

Fortunately, the actual dispute between the parties—limited to the issue of whether Holsten deprived Isaac of a laundry bag and, thus, clean bedsheets—is relatively simple and is recounted below.

On November 24, 2015, Isaac received a conduct violation for having written a threatening letter to Warden Paula Reed, whereby he called Warden Reed a "bitch," demanded she do something about the correctional officers in his housing unit, and stating "I WILL KILL THEM FUCKING PIGS." (#69, p. 2; #69-5, p. 8). A hearing was held regarding this conduct violation on December 2, 2015, in which a three-member panel ordered Isaac to be placed in the restrictive housing unit (RHU) for disciplinary and security reasons. (#69, p. 2; #69-5, p. 12-13). Apparently, Isaac lost his laundry bag for the first time when he was transferred to the RHU, stating "they escorted me to the hole, and when they brought my property to the hole, they didn't have a laundry bag with my property." (#69-1, p. 30). A few weeks later, on January 3, 2016, Isaac wrote a "kite" (a prison grievance form) to Holsten asking for a laundry bag. (#69-1, p. 32; #9, p. 3). Holsten stamped "DENIED" on the kite one day later and asserts that he did so because Isaac did not follow proper procedures in requesting a new laundry bag; according to Holsten, Isaac was required to report the laundry bag as lost property and could receive a

3

lost property form from third-shift officers who process said forms and forward that information on to a "functional unit manager." (#69, p. 5-6; #9, p. 3). Isaac, in turn, "disputes that he failed to follow proper procedure" because he would "beg and beg and beg every shift for a lost laundry form only to be told there was none in the bubble." (#90, p. 7). Holsten also asserts that Isaac's Individual Confinement Report (ICR) indicates Isaac refused linen exchanges on November 26, 2015, December 3, 2015, December 14, 2015, December 29, 2015, January 8, 2016, and January 15, 2016. (#69, p. 6). Isaac concedes that his ICR reflects that he refused linen exchanges on numerous occasions; however, Isaac states in his supplemental brief that "at no time during [my] stay in segregation was there ever conducted a linen exchange … There was, however, blanket exchanges every 60 days … [T]here was never a time when [I] was offered to exchange [my] sheets." (#127, p. 13-14; #90, p. 2). Finally, Isaac attempts to insert a medical component into the equation, claiming he was forced to use the same set of sheets for "over 350 days," which became "contaminated" and caused him to "beg[i]n seeking medical assistance for a rash." (#127, p.3-4, 12). However, the medical records provided by Isaac in support of this medical component appear to indicate Isaac, in fact, suffers from a chronic rash since the age of twenty-five (Isaac was thirty-seven years old at the time of the relevant medical appointments) and, moreover, said records notably predate Isaac's transfer to the RHU by more than six months—suggesting Isaac's rash existed well before the ongoing controversy relating to his bedsheets. (#129-1, p. 1). Isaac noted in his deposition that he did, finally, receive a laundry bag sometime around November of 2016 from a caseworker known as "Mr. Jacobs." (#69-1, p. 33-34).

**II. ANALYSIS**

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment, in particular, prohibits punishments that deprive detainees of the minimal civilized measure of life's necessities. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same").[1] These minimal necessities have been construed to include reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. *See, e.g., Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir. 1996) (reasonable access to adequate hygiene supplies); Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (reasonable access to food, clothing, shelter, and medical care); *Cody v. Hillard*, 799 F.2d 447, 450 (8th Cir. 1986) (reasonable access to ventilation, water, safety, laundry services, and utilities).

A prison official will only be found liable under the Eighth Amendment for denying a detainee of humane conditions of confinement if: (1) objectively, the conditions constituted a substantial risk of serious harm to health or safety; and (2) subjectively, the official knows of and disregards an excessive risk to the detainee's health or safety. *Washington v. Denney*, 900 F.3d 549, 559-560 (8th Cir. 2018). To satisfy

---

[1] It is not altogether clear whether Isaac is proceeding under the Eighth Amendment or the Fourteenth Amendment. As part of the original summary judgment briefing, the parties argued as if Isaac was proceeding under the Eighth Amendment. (#68, p. 2; #91, p. 1). In any event, the standards used in the Eighth Circuit as between the Eighth and Fourteenth amendment are substantively identical and, therefore, this Court will proceed under the Eighth Amendment in conformity with the parties' prior argumentation.

5

the objective prong, the court looks to the "totality of circumstances of [a detainee's] confinement" and specifically focuses on "the length of [detainee's] exposure to unsanitary conditions and how unsanitary the conditions were." *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam); *see also Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (the objective component is "contextual and responsive to contemporary standards of decency"). To satisfy the subjective prong, it must be shown the official "recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Washington*, 900 F.3d at 559 (emphasis in original). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 560. Furthermore, in testing the appropriateness of the official's response, it is not enough that the official denied a detainee of humane conditions or was otherwise negligent in responding, rather it must be shown that the official was "deliberately indifferent in their response to the perceived risk." *Id*.

Regarding the objective prong, this Court disagrees with Holsten that the alleged conditions Isaac was subject to did not constitute a substantial risk of serious harm to health or safety. Holsten cites a myriad of cases showing one-to-two-week-long instances of poor living conditions were inadequate to support the finding of a constitutional violation. *See, e.g., Goldman v. Forbus*, 17 Fed.Appx. 487, 488 (8th Cir. 2001) (no constitutional violation where detainee slept on the floor near the toilet for two nights and was sprinkled with urine by other detainees using the toilet); *Smith v. Copeland*, 87 F.3d 265, 268-269 (8th Cir. 1996) (no constitutional violation where detainee was subjected to

6

overflowed toilet in his cell for four days); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (no constitutional violation where detainee was subject to unsanitary cell conditions for eleven days). However, none of these cases can be extrapolated so far as to apply to the circumstances here, where the allegation being made is that unsanitary conditions continued for nearly a year. *See Owen*, 328 F.3d at 1027 (reversing district court's ruling that detainee who had to sleep next to toilet for roughly five weeks was too brief to be unconstitutional as a matter of law); *see also Hutto v. Finney*, 437 U.S. 678, 686-687 (1978) (filthy, overcrowded cell might "be tolerable for a few days and intolerably cruel for weeks or months"). Under the guidance of *Owen* and the cases cited therein, this Court finds the allegations of Isaac, that he was subject to a year-long deprivation of clean bedsheets in conjunction with a pre-existing skin condition exacerbated by the lack of clean bedsheets, constitute an objective risk of substantial harm to health or safety.[2]

Regarding the subjective prong, this Court finds Isaac has offered no evidence whatsoever to establish Holsten was "deliberately indifferent in [his] response" to Isaac's complaints. *Washington*, 900 F.3d at 560. The only transaction between Holsten and Isaac appears to be Holsten's denial of a "kite" in which Isaac stated "I've been without a

---

[2] While Holsten points to the ICR (accounting for only a few weeks) as proof that Isaac repeatedly refused linen exchanges and thus was his own cause for the year-long deprivation of clean bedsheets, the Court notes Isaac refutes this point—explaining that blankets were regularly offered, but not bedsheets. This Court cannot determine from the record what "linen exchange" means, in particular whether Isaac's distinction between bedsheets and blankets is accurate based on the apparent importance of a missing laundry bag. Isaac also repeatedly argues the lack of said laundry bag prevented him from receiving clean bedsheets, in specific, blankets notwithstanding—exchanged apparently without the need for a laundry bag. Holsten has not attached laundry protocols nor an affidavit from someone knowledgeable with such protocols, and therefore this Court cannot determine whether Isaac is accurately stating the policy in affect at Southeast Correctional Center. Holsten briefly dismisses Isaac's argument that the lack of a laundry bag was preventing him from receiving clean bedsheets (#68, p. 8 (stating, without citation to the record, "it was not necessary for [Isaac] to have a laundry bag to have clean sheets and clothing")), but does not explain where in the record this statement is supported. As the non-movant, this unresolved factual dispute must be decided in Isaac's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial").

laundry bag since 11-24-15 — the staff lost it!!!" (#9, p. 3). Holsten asserts the reason for his denial was because Isaac did not follow proper procedures for requesting a new laundry bag, explaining Isaac was to contact third-shift officers and report his bag as lost property. Isaac apparently understood this message, including the fact that Holsten was not the proper party to seek a new laundry bag from, because Isaac himself states he would "beg and beg and beg every shift for a lost laundry form only to be told there was none in the bubble." (#90, p. 7). Thus, Isaac's case, at least as it relates to Holsten, is essentially predicated on nothing more than a grievance denial, which cannot support an Eighth Amendment claim in itself. *Washington*, 900 F.3d at 560 ("a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety"). There are simply no facts to suggest Holsten, in denying Isaac, knew of Isaac's chronic skin condition, his struggle to obtain a lost property form, or his year-long efforts to obtain clean bedsheets—the record reveals only that Holsten knew Isaac was grieving that he did not have a laundry bag, a complaint that was rejected simply because Isaac did not follow proper procedures. This scenario, devoid of any allegations that Holsten understood Isaac's particular confinement conditions and had the occasion to deliberately ignore them, is insufficient to support an Eighth Amendment claims and, therefore, Holsten's motion will be granted. *See Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) (detainee, who was placed in a strip cell for two days without clothing, bedding, or running water, failed to show that named prison officials had knowledge of the conditions of his confinement or knew of any excessive risk to his health or safety);

8

*Lenz v. Wade*, 490 F.3d 991, 996 (8th Cir. 2007) (detainee failed to show deliberate indifference by warden arising from complaints that detainee was battered by two correctional officers; while warden was aware of one of the officer's use of excessive force on a single occasion during seven years of service, that fact was not enough to show warden thereby had knowledge of a substantial risk of serious harm either officer posed to detainees).

**III. CONCLUSION**

For the reasons set forth above, defendant Holsten's motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Timothy Holsten's motion for summary judgment (#67) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Harold Isaac's "motion to submit awaiting exhibits" (#129) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Harold Isaac's "motion for emergency injunctive request in lieu of false imprisonment[,] staff retaliation[,] and use of state equipment and computors (sic) to force and falsify conduct violation report in attempt to mislead" (#130) is **DENIED**.

So ordered this 28th day of September 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE